IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Alexander H. Bradley, Jr, | ) | C/A No.: 3:08-2510-JFA-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| South Carolina Department of | ) | **ORDER** |
| Corrections; Major Mark Price; Warden | ) | |
| A. J. Padula; and John Ozmint, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court for review of the Magistrate Judge's report and recommendation ("Report") made in accordance with 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g) (D.S.C.).

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a de novo determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

Wallace v. Housing Auth. of the City of Columbia, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

I. <u>Factual and Procedural History</u>

Plaintiff Alexander H. Bradley was employed by the South Carolina Department of Corrections ("SCDC") at the Lee Correctional Institute ("Lee") in Bishopville, South Carolina, from February 2001 until January 26, 2007, with the exception of a brief stint at the Florence County Sheriff's Department from June until November of 2001. (Pl. Dep. 13:11–14.) Plaintiff worked in the Special Management Unit ("SMU") from November 2001 until February 2004, when he was transferred to the "yard" area of Lee. (Pl. Dep. 21:20–24.) During 2005 plaintiff applied for numerous promotions, and asserts that less qualified white males received the positions, though he concedes that he has no specific evidence that race played a role in the promotions. (Pl. Dep. 36:16–21.) On February 23, 2005, plaintiff opened a cell door without a supervisor present, and "[d]ue to the seriousness his offense and lack of judgment" defendant Warden A.J. Padula ("Padula") recommended corrective action. (Pl. Resp. Ex. 3.) However, in April 2006, Padula promoted plaintiff to Sergeant and plaintiff was transferred back to SMU.

On May 18, 2006, an inmate, by the name of McGahee, threw urine and feces at plaintiff. Plaintiff reported the incident, though SCDC Investigator Karen Hair ("Hair") declined to prosecute McGahee, allegedly because plaintiff approached McGahee in an incorrect manner. Shortly after the Mcgahee incident, Plaintiff's mother was admitted to the hospital to treat her cancer and plaintiff took family medical leave from May until July of 2006. While on medical leave, plaintiff visited Lee County Magistrate Woodham's office

2

to press criminal charges against McGahee. However, Magistrate Woodham informed plaintiff that prosecutorial discretion rested with Hair. (Pl. Dep. 44:20–23.) Upon word of plaintiff's visit to Magistrate Woodham, Major Mark Price verbally counseled plaintiff, and asked him to review relevant SCDC policy.

The events leading to plaintiff's termination occurred on July 31, 2006, in the shower at Lee, when plaintiff and Sergeant Deborah Walker ("Walker") were tasked with escorting inmates from the showers. (Pl. Dep. 70:9–12.) Plaintiff approached an inmate by the name of Livingston, and instructed him to turn around so that plaintiff could fasten handcuffs around his wrists. The inmate began to ask plaintiff a series of nonsensical questions, to which plaintiff responded with threats to gas him. Plaintiff successfully handcuffed Livingston without incident and they began to depart the shower. As they approached the exit, plaintiff contends that Livingston, still in handcuffs, tried to pull away, so plaintiff "took him down with a clean sweep," because plaintiff "didn't know what he was going to do." (Pl. Dep. 73:15–17;75:8–9.) Livingston's unprotected fall drew blood from his chin and required sutures. Walker reported the incident and Hair requested that the South Carolina Law Enforcement Division ("SLED") begin an investigation of plaintiff's alleged misconduct.

Later on July 31, 2006, plaintiff was assigned to the control room, where he allegedly violated SCDC policy by leaving his post and acting in an unprofessional manner. (Pl. Dep. 80:26.) On August 23, 2006, Padula issued a corrective action for leaving a security post and

unprofessional conduct and plaintiff received a forty-hour suspension without pay and 180 days of probation. Following the events of July 31, 2006, plaintiff was reassigned to the general inmate population.

On August 30, 2006, SLED Special Agent Andrew Bethea, the investigator tasked with investigating the Livingston incident, issued a report summarizing interviews with fact witnesses and setting forth a timeline of relevant events. A copy of that report was forwarded to Third Circuit Solicitor Kelly Jackson on September 27, 2006. On October 13, 2006, Solicitor Jackson declined to pursue charges against plaintiff. Thereafter, SCDC began its own internal investigation and completed a report on November 21, 2006, which Padula received on December 13, 2006.

On January 1, 2007, plaintiff wrote to Congressman James Clyburn. Plaintiff complained about the corrective action for leaving his post and for unprofessional conduct, problems with grievance procedures, and alleged harassment and retaliation. (Pl. Resp. Ex. 11, 2.) Congressman Clyburn wrote a letter to SCDC Director Jon Ozmint on January 4, 2007, requesting plaintiff's claims be reviewed. South Carolina Senator Kent Williams also requested Ozmint to review plaintiff's problems at Lee shortly after Congressman Clyburn. Director Ozmint wrote back to Congressman Clyburn on January 17, 2007, indicating that the August 23, 2006 corrective action was not the result of retaliation or discrimination.

On January 26, 2007, Padula placed plaintiff on administrative leave after reviewing SCDC's internal report of the Livingston Incident. Padula believed that the plaintiff's

4

actions during the Livingston incident constituted excessive force in violation of SCDC policy. On January 30, 2007, Robin Gracien, of SCDC human relations, wrote plaintiff to indicate that his employment was terminated effective January 26, 2007. (Pl. Resp. Ex. 18.)

Plaintiff filed this action in United States District Court <u>pro se</u> on July 11, 2008. Thereafter plaintiff secured the services of an attorney and filed an amended complaint alleging violation of his constitutional rights pursuant to 42 U.S.C. §§ 1981 and 1983, and wrongful termination in violation of public policy under South Carolina law. This court has jurisdiction pursuant to 28 U.S.C. § 1331.

Defendants filed a joint motion for summary judgment on July 27, 2009, which was fully briefed. The motion was automatically referred to Magistrate Judge Joseph McCrory pursuant to Local Rule 73.02(B)(2)(g). The Magistrate Judge filed a detailed and comprehensive Report on January 15, 2010, recommending that defendants' motion for summary judgment be granted. Plaintiff was informed of his right to file objections to the Report, which he filed on February 1, 2010. Defendants declined to file a reply to plaintiff's objections. This matter is now ripe for review.

Plaintiff appears to assert four objections to the Report: (1) that the Magistrate Judge improperly determined that defendant A. J. Padula ("Padula") had a good faith belief that plaintiff had violated South Carolina Department of Corrections ("SCDC") policy; (2) that the Magistrate Judge erred in concluding that plaintiff failed to establish comparators; (3) that the Magistrate Judge incorrectly characterized plaintiff's letter to Congressman Clyburn

as private, rather than public, speech; and (4) that the Magistrate Judge incorrectly determined that plaintiff's claim for termination in violation of public policy could be resolved without a jury. (Pl.'s Obj. 4.)

In light of the standard set out above, the court has reviewed, de novo, the record, the law, the Report of the Magistrate Judge, together with plaintiff's objections thereto. The court finds that there are no genuine issues of material fact under Rule 56, and that defendants are entitled to judgment as a matter of law on each of plaintiff's claims.

II. Discussion

    A. § 1981 Recommendations and Objections

The Report found that plaintiff could not make out a prima facie case of wrongful termination pursuant to § 1981 because he failed to identify a similarly situated employee outside of the protected class who engaged in similar misconduct and was not terminated. Also, the Report found that even if plaintiff could make out a prima facie case of wrongful termination, Padula offered a legitimate and nondiscriminatory reason for terminating plaintiff. As to plaintiff's § 1981 claim alleging disparate discipline, the Magistrate Judge recommended summary judgment because plaintiff failed to show that he was disciplined more harshly than similarly situated SCDC employees of another race

        1. Wrongful Termination: Padua's Good Faith Belief that Plaintiff Violated SCDC Policy

Plaintiff contends that Padua could not have held a good faith belief that plaintiff violated SCDC policy because the South Carolina Law Enforcement Division ("SLED")

6

investigation of plaintiff's conduct on July 31, 2006, did not result in his criminal prosecution. However, plaintiff misses the mark as he fails to challenge the Magistrate Judge's finding that he failed to establish a prima facie case for wrongful termination pursuant to § 1981.

In the § 1981 context, the Fourth Circuit has adopted the McDonald Douglas Corp. v. Green, 411 U.S. 792 (1973), burden shifting analysis where plaintiff, as here, does not assert direct proof of a defendant's intent to discriminate. See Gairola v. Va. Dep't of Gen. Serv's, 753 F.2d 1281, 1285–86 (4th Cir. 1985). McDonald Douglas places the initial burden on the plaintiff to make out a prima facie case, then requires the employer to put forth a legitimate, nondiscriminatory basis for its challenged employment action. If the employer is able to articulate an acceptable rationale for its action, the plaintiff must then establish that the stated reason for the action was pretext for discrimination. McDonald Douglas, 411 U.S. at 802–03; Gairola, 753 F.2d at 1285–88.

Plaintiff challenges the Report's finding that he failed to show that Padula's stated reason for firing plaintiff was pretextual. However, plaintiff fails to object to the Magistrate Judge's conclusion that he failed to make out a prima facie case of wrongful termination. Accordingly, it is not necessary to go forward and address the issue of pretext.. The Magistrate Judge determined that plaintiff failed to make out a prima facie case for wrongful termination and the court agrees.

To establish a prima facie case of under § 1981, plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action; and (4) the position was filled by a similarly qualified applicant outside the protected class or other employees who were not members of the protected class were retained under apparently similar circumstances. Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007).

The Magistrate Judge found that plaintiff failed to put forth evidence under the fourth prong of the test as plaintiff has not shown that he was replaced by someone outside his protected class or that others, who are not black, were retained after breaching SCDC policy of similar gravity. After reviewing the record, the court agrees with the Magistrate Judge's finding that plaintiff has failed to put forth evidence that would allow him to make the required showing. Plaintiff attempts to make out his prima facie case, in toto, with the following statement: "The Defendant has sited [sic] to separate incidents involving white individuals compared to the Plaintiff. As set forth in the Plaintiff's affidavit the Plaintiff was subjected to harsher discipline." (Pl.'s Resp. 22.)

Whether Plaintiff was subjected to harsher discipline than other employees has no bearing on whether "the position was filled by a similarly qualified applicant outside the protected class." Holland, 487 F.3d 208. Accordingly, the court must determine whether "other employees who were not members of the protected class were retained under

8

apparently similar circumstances." Id. Plaintiff relies almost exclusively on an unsigned, undated, and unnotarized "affidavit." Such a statement, lacking any indicia that the purported affiant swore or declared the information to be true under penalty of perjury, is not properly considered by the court on a motion for summary judgment. See 28 U.S.C. § 1746 ("Wherever, under any law of the United States or under any rule . . . any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported . . . in writing of such person which is subscribed by him, as true under penalty of perjury, and dated . . . .") (emphasis supplied); Fed. R. Civ. P. 56(e)(1). Even if the court could properly consider plaintiff's "affidavit," the document would be of no moment as it fails to allege, much less detail, conduct similar to plaintiff's that went unpunished. Accordingly, plaintiff's claim for wrongful termination pursuant to § 1981 is dismissed with prejudice for failure to make out a prima facie case.

In the interest of completeness, the court also notes that plaintiff fails to make any argument or provide any evidence that he was performing his duties at a level that met the employer's legitimate expectations at the time of the adverse employment action.

2. Disparate Discipline: Plaintiff's Purported Comparators

Plaintiff asserts that the absence of disciplinary records for dissimilarly situated employees of SCDC provides sufficient proof of disparate disciplinary practices for Plaintiff to survive summary judgment.

To establish a prima facie case of disparate discipline, a plaintiff must show (1) that he engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person. Lightner v. City of Wilmington, 545 F.3d 260, 264–65 (4th Cir. 2008). Thus, the task falls on the plaintiff to identify a suitable comparator, bearing in mind that "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." Id. at 265.

Plaintiff appears to have declined to set forth a prima facie case of disparate discipline in his response to defendants' motion for summary judgment; providing a subject heading on page 21 of the response without setting forth any argument or evidence below. (Pl. Resp. 21.) Plaintiff does, however, argue that he received disparate discipline under the heading "Wrongful Termination." As set forth above, his argument consists solely of the statement: "The Defendant has sited [sic] to separate incidents involving white individuals compared to the Plaintiff. As set forth in the Plaintiff's affidavit the Plaintiff was subjected to harsher discipline." (Pl.'s Resp. 22.) As plaintiff relies solely on an inadmissible "affidavit" and the defendants' list (from the plaintiff's deposition) of four white officers, the court turns to the

defendants' brief to determine if it makes out a prima facie case for plaintiff. The defendants' identified three to four white officers that plaintiff mentioned in his deposition: Sergeant Gerald, Officer Borgersrode, Officer Grate, and an unknown officer. The defendants assert, first, that Sergant Gerald cannot be a comparator because SCDC records do not reveal that a person by that name ever worked at the Lee County Correction Institute. Second, that no evidence in the record provides any information about Officer Borgersrode. Third, that there is no evidence of an unnamed, unidentified white person letting an inmate take a key. Fourth, that the incident involving Officer Grate was considered to be of an order of magnitude less serious than the conduct for which plaintiff was disciplined.

Plaintiff, in his response, does not controvert any of these defense arguments. Instead he appears to incorporate them by reference in order to make out his prima facie case. Such an approach fails here where plaintiff introduced no evidence that these incidents were of comparable seriousness to his disciplined conduct, or of what discipline any of the purported comparators did, or did not, receive. The court finds that plaintiff has failed to make out a prima facie case of disparate discipline and dismisses his claim with prejudice.

B.  § 1983 Recommendations and Objections

The Magistrate Judge found that plaintiff failed to state a claim pursuant to § 1983 because he could not establish that he was deprived of a liberty or property interest. Specifically, the Report concluded that plaintiff's at-will employment relationship did not

constitute property and that plaintiff's letter to Congressman Clyburn did not involve matters of public concern.

   1. The First Amendment Status of Plaintiff's Letter to Congressman Clyburn

Plaintiff objects to the Magistrate Judge's finding that his letter to Congressman Clyburn did not constitute speech of public concern. In order for speech to constitute a matter of public concern, the speech must involve an issue of social, political or other interest to a community. Urofsky v. Gilmore, 216 F.3d 401, 406-07 (4th Cir. 2000).

Plaintiff's letter to Congressman Clyburn states in relevant part:

> I am requesting your assistance with what I consider to be a very serious matter. I believe that I am being treated unfairly by my employer and would appreciate any assistance that you may be able to give me . . . .
> I would like your assistance in investigating this process and getting this suspension removed from my record . . . .

(Pl. Resp. Ex. 11, 2.) To determine whether speech involves a matter of public concern, the court must examine "the content, context, and form of the speech at issue in light of the entire record." Urofsky, 216 F.3d at 406. Where speech at issue is primarily of personal workplace interest to the plaintiff, such as a private personnel grievance, it is clear that the First Amendment does not apply. Id. at 427 (citing Berger v. Battaglia, 779 F.2d 992, 998 (4th Cir. 1985)).

The court finds that plaintiff's letter to Congressman Clyburn asking for the Congressman's help in "getting the suspension removed from [plaintiff's] record," considering the entire record, constitutes a private personnel grievance and does not warrant

First Amendment protection. Plaintiff's objection to the Magistrate Judge's findings as to his § 1983 claim for violation of his First Amendment rights is rejected. Plaintiff's § 1983 claims are hereby dismissed with prejudice.

    C.    Termination in Violation of Public Policy Recommendation and Objection

The Magistrate Judge determined that plaintiff failed to show how the facts of his termination applied to the two recognized exceptions to South Carolina's employment-at-will doctrine. The Report found that Plaintiff has not shown that he was fired for failing to violate a criminal law or that his termination violated criminal law. The Magistrate Judge also noted that the South Carolina Supreme Court has declined to extend the public policy exception to cases where the employee has an existing remedy for a discharge which allegedly violated his rights. See Epps v. Clarendon County, 405 S.E.2d 386, 387 (S.C. 1991) (declining to extend Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d 213 (S.C. 1985) (recognizing the public policy exception) to situations where "the employee has an existing remedy for a discharge which allegedly violates rights other than the right to employment itself," such as § 1983).

        1.    Must the Determination of Whether a Termination Violated Public Policy be Submitted to a Jury?

No. Plaintiff asserts that the South Carolina Supreme Court, in Gardner v. Morrison Knudsen Corp., 456 S.E.2d 907 (S.C. 1995), found that if there is a factual issue as to whether the employer's discharge violated public policy, then it is a question of fact for the jury. However, plaintiff neglects to address the application of Epps to his case and explain

13

why the availability of §§ 1981 and 1983 does not constitute an "existing remedy for a discharge which allegedly violates rights other than the right to employment itself." Epps, 405 S.E.2d at 387. If plaintiff had been terminated on the basis of his race, § 1981 would have provided a remedy. Where such a remedy exists, Epps does not allow plaintiff's claim for wrongful termination. Accordingly, plaintiff's claim for wrongful termination in violation of public policy is dismissed with prejudice.

III.  Conclusion

For the foregoing reasons, the court adopts in full the Report of the Magistrate Judge, overrules plaintiff's objections, and grants defendants' motion for summary judgment.

IT IS SO ORDERED.

March 5, 2010
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge